COREY R. AMUNDSON
Chief, Public Integrity Section
Criminal Division
U.S. Department of Justice
DAHOUD ASKAR
Trial Attorney, Public Integrity Section
1301 New York Ave. NW, 10th Fl.
Washington, DC 20005
202-368-1667
Email: Dahoud.Askar@usdoj.gov
ALEXANDER GOTTFRIED
Trial Attorney, Public Integrity Section
1301 New York Ave. NW, 10th Fl.
Washington, DC 20005
202-615-1286
Email: Alexander.Gottfried@usdoj.gov
*Attorneys for the United States*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>MICHELE FIORE,<br><br>        Defendant. | Case No. 2:24-cr-00155-JAD-DJA<br><br>**Government's Omnibus Motion in Limine** |

COMES NOW the United States of America, by and through COREY AMUNDSON, Chief, United States Department of Justice, Public Integrity Section, and ALEXANDER GOTTFRIED and DAHOUD ASKAR, Trial Attorneys, and submits this Omnibus Motion in Limine. This motion raises key evidentiary issues that the government expects to arise at trial, which is set for September 24, 2024. As the government continues to prepare for trial over the next three weeks, it anticipates that additional evidentiary issues may

arise that require rulings by the Court. In these instances, the government requests leave of the Court to file additional motions related to such issues through trial.

## Factual Background

The defendant, Michele Fiore, is a longtime Southern Nevada politician who has campaigned for and served in a succession of offices, including the Nevada State Assembly and Las Vegas City Council. Fiore has a significant public profile in Nevada and has leveraged this profile to raise substantial funds for a variety of entities she controls. The evidence gathered during the government's investigation demonstrates that Fiore has repeatedly defrauded donors to her campaigns, her political action committee, and even her Section 501(c)(3) charity by secretly diverting hundreds of thousands of dollars in contributions to those entities for her personal use. This has enabled the defendant to live beyond her means, using donor money to pay for rent, plastic surgery, vacations, and her daughter's wedding. To facilitate and conceal her fraud, the defendant has lied on her legally mandated campaign finance disclosures and made use of several entities as conduits, including a political consulting company, a magazine company, and a relative's event-planning company.

During 2019 and 2020, in a particularly brazen example of the defendant's pattern of fraud, Fiore solicited money using both her political action committee and a newly formed charity (identified as "Political Action Committee A" and "Charity A" in the Superseding Indictment) for the supposed purpose of building a memorial to fallen Las Vegas Metropolitan Police Officer Alyn Beck. The defendant promised donors in oral and written solicitations that "100%" of their contributions would be used to fund a statue of Beck. In fact, as the defendant knew from her position on the city council, the statue was donated and paid for by the real estate developer who funded the construction of Alyn Beck Memorial Park. Despite

this knowledge, the defendant used the tragedy of Officer Beck's murder for her own profit, taking advantage of donors' generosity and spending their money on herself and her family.

On July 16, 2024, a federal grand jury sitting in the District of Nevada indicted Fiore on five counts relating to the conduct described above, consisting of four counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. On August 20, 2024, the grand jury returned a Superseding Indictment including two additional counts of substantive wire fraud. Trial is currently set for September 24, 2024.

### Motion to Preclude Forms of Argument Designed to Elicit Jury Nullification

The government respectfully moves this Court to preclude the defendant from arguing or otherwise presenting evidence or pursuing lines of inquiry designed to elicit or encourage jury nullification. It is improper for a defendant to suggest that the jury should acquit a defendant even if it finds that the government has met its burden of proof under the law. Nullification is "a violation of a juror's sworn duty to follow the law as instructed by the court," and "trial courts have the duty to forestall or prevent" it, including "by firm instruction or admonition." *Merced v. McGrath*, 426 F.3d 1076, 1079-80 (9th Cir. 2005); *United States v. Lynch*, 903 F.3d 1061, 1080 (9th Cir. 2018) ("[N]ullification is by its nature a rejection of" a juror's duty to follow the law); *United States v. Kleinman,* 880 F.3d 1020 (9th Cir. 2018) (There is no constitutional right to jury nullification, so depriving a defendant of a jury that is able to nullify is plainly not a constitutional violation.")[1]

---

[1] *See also, e.g., United States v. Krzyske,* 836 F.2d 1013, 1021 (6th Cir. 1988) (affirming district court's refusal to discuss jury nullification with the jury because "[t]o have given an instruction on nullification would have undermined the impartial determination of justice based on law"); *see also Scarpa v. Dubois*, 38 F.3d 1, 11 (1st Cir. 1994) (noting that "defense counsel may not press arguments for jury nullification in criminal cases"); *United States v.*

"A defendant's right to present evidence in support of his defense . . . is not without limits." *United States v. Espinoza-Baza*, 647 F.3d 1182, 1188 (9th Cir. 2001) (citing *Greene v. Lambert*, 288 F.3d 1081, 1090 (9th Cir. 2002)). "While the Constitution . . . prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence" that is irrelevant, lacking in foundation, or when "its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Id.* (quoting *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006)). See Fed. R. Evid. 401, 403. Here, certain categories of evidence that the defendant may seek to introduce at trial do not bear on her guilt or innocence but instead would only serve to encourage the jury to nullify, making them irrelevant and likely to confuse the issues and mislead the jury.

The defendant is not required to disclose their trial strategy, and while the government is not able to anticipate each potential avenue of jury nullification that the defendant may

---

*Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993) ("[N]either the court nor counsel should encourage jurors to exercise [nullification] power. . . . A trial judge, therefore, may block defense attorneys' attempts to serenade a jury with the siren song of nullification."); *United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) ("Jury nullification 'is not to be positively sanctioned by instructions,' but is to be viewed as an 'aberration under our system.'") (quoting *United States v. Anderson*, 716 F.2d 446, 450 (7th Cir. 1983)); *United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996) ("An unreasonable jury verdict, although unreviewable if it is an acquittal, is lawless, and the defendant has no right to invite the jury to act lawlessly. Jury nullification is a fact, because the government cannot appeal an acquittal; it is not a right, either of the jury or of the defendant."); *United States v. Trujillo*, 714 F.2d 102, 105 (11th Cir. 1983) ("Appellant's nullification argument would have encouraged the jurors to ignore the court's instruction and apply the law at their caprice. While we recognize that a jury may render a verdict at odds with the evidence or the law, neither the court nor counsel should encourage jurors to violate their oath.").

seek to pursue at trial, the government notes at least the following categories of argument or

evidence which are irrelevant and inadmissible:

- Evidence or argument about the federal prosecutions related to the Bundy ranching family, and/or the defendant's public advocacy on their behalf;
- Evidence or argument related to the decision of the United States Attorney's Office in the District of Nevada, including any individual prosecutor in that office, to participate or not participate in the instant investigation and prosecution;
- Evidence or argument about decisions by state and local authorities whether to investigate or prosecute the misconduct charged in the superseding indictment;
- Argument that the defendant was selectively or vindictively prosecuted based on her political beliefs or her views about federal law enforcement;
- Evidence of charitable works performed by the defendant unrelated to Charity A or Political Action Committee A;
- Argument regarding the potential sentence that the defendant might receive, including in light of her age.

Broadly speaking, the main potential arguments that the government seeks to preclude

fall into two categories: arguments about the consequences of a guilty verdict, and arguments

that the prosecution was brought for an improper purpose. With respect to the first, it is well-

established that the jury may not consider punishment or other potential consequences of a

guilty verdict in reaching its decision. In fact, Ninth Circuit Model Criminal Jury Instruction

6.22 states, "The punishment provided by law for this crime is for the court to decide.  You

may not consider punishment in deciding whether the government has proved its case against

the defendant beyond a reasonable doubt." This instruction has been upheld in U*nited States

v. Lynch*, 903 F.3d 1061, 1081 (9th Cir. 2018). Here, if convicted, the defendant faces a

maximum penalty of twenty years in prison on each of the seven counts with which she is

charged. The defendant has emphasized in her public media appearances related to this case

that she is an older woman and a grandmother. The defendant should not be permitted to

seek acquittal on the basis of sympathy from the jury at the prospect of a grandmother serving

potentially significant prison time.

Regarding the second category, the defendant has publicly claimed that this prosecution is the result of a longstanding personal vendetta against her by the United States Attorney's Office in Nevada (which did not participate in seeking the indictment in this case and will not participate at trial). These claims are not only false, but they have no bearing on the elements of the offenses charged or any factual defense at trial. Although the defendant is free to raise legal arguments concerning the initiation of this prosecution by way of a pre-trial motion, evidence of this sort concerning the government's charging decisions is unequivocally impermissible at trial.[2] As the Supreme Court has stated, "[a] selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." United States v. Armstrong, 517 U.S. 456, 463 (1996).

Prosecutors have wide latitude to determine whether an individual's conduct merits criminal prosecution. "In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978); *see also United States v. Batchelder*, 442 U.S. 114, 124 (1979) (same). "This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review." *United States v. JDT*, 762 F.3d 984, 996 (9th Cir. 2014) (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985)). Moreover, "separation of powers concerns prohibit [courts] from reviewing a prosecutor's charging decisions absent a prima facie showing that it rested on an

---

[2] *See* Fed. R. Crim. 12(b)(3)(A) (providing that a "motion alleging a defect in instituting the prosecution" must "be raised by pretrial motion").

impermissible basis, such as gender, race or denial of a constitutional right." *United States v. Palmer*, 3 F.3d 300, 305 (9th Cir. 1993). Further, "the presumption of regularity supports . . . prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14–15 (1926)).

Here, there is no evidence that the government abused its discretion in charging the defendant, who defrauded donors and stole money that she represented would be used for a fallen police officer's memorial. There is no allegation that the government charged the defendant on any impermissible basis "such as gender, race or denial of a constitutional right." *Palmer*, 3 F.3d at 305. Yet the defendant has signaled her intention to distract the jury by making baseless claims of vindictive prosecution.  In one Facebook post, attached to this motion as Exhibit A, the defendant invokes a prior criminal prosecution with no connection to this one, claims that the federal government "has tried to cheat the system," and alleges that she is "their target for standing up for what is right." The defendant cites no support for these meritless claims—nor could she. The Court should bar the defendant from importing these baseless and improper claims into the courtroom, where the defendant may not put evidence and argument before the jury that is wholly irrelevant to the charged offenses and only serves to confuse the issues and mislead them.

## Motion to Admit Evidence of Other Crimes, Wrongs, or Acts Under Federal Rule of Evidence 404(b)

On August 20, the government provided written notice under seal to the defendant and Court of its intent to seek to admit evidence at trial of various crimes, wrongs, or other acts by the defendant. As articulated more fully in that notice, those acts include "1) the

conversion of funds donated to Fiore's City Council campaign for political purposes to her personal use; 2) the conversion of funds donated to Fiore's political action committee for political purposes to her personal use; 3) Fiore's laundering of stolen funds through entities controlled by Fiore and her relatives; and 4) Fiore's false statements on her campaign finance reports concealing how she spent the stolen funds." For the reasons provided in the sealed notice, the government hereby moves *in limine* to admit this evidence at trial.

### Motion to Bar Specific Instances of "Good Acts" Offered by the Defendant

In the event the defendant seeks to present evidence of specific instances of purported good acts as circumstantial proof that she did not commit the charged offenses, the Court should exclude such evidence. Evidence of a person's character is generally not admissible to prove that on a particular occasion the person acted in accordance with that character. Fed. R. Evid. 404(a). Federal Rule of Evidence 404(a)(2) establishes an exception to this rule, permitting a criminal defendant to introduce evidence of good character (which the prosecution may rebut) in order to support an inference that the defendant would not have committed the charged crimes.

Yet in recognition of the confusion, unfair prejudice, and substantial delay that would result if defendants were permitted to introduce evidence of each of their purported good acts, the rules of evidence also place important constraints on a defendant's introduction of character evidence. Federal Rule of Evidence 405 requires that a criminal defendant attempt to prove good character only through "testimony about the [defendant's] reputation" or by "testimony in the form of an opinion" — not evidence of the defendant's specific purported good acts. See Fed. R. Evid. 405(a). Indeed, the single, narrow exception to this prohibition on the introduction of specific purported good acts is when a defendant's "character or

character trait is an essential element of a charge, claim, or defense." Fed. R. Evid. 405(b). This is because, as the advisory committee notes to Rule 405 observe, "evidence of specific instances of conduct . . . possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time" and should only be introduced when "character is, in the strict sense, in issue."

The category of cases for which the defendant's "character or character trait is an essential element of a charge, claim, or defense," is narrow. See 1 McCormick On Evid. § 187 (7th ed.) (collecting cases and noting that specific instances of conduct are only admissible in the "unusual situation in which an offense, claim, or defense for which character is an essential element is pled," such as an action for defamation or negligence). Thus, for example, character is not an essential element of a charge or defense in a criminal case where the defendant is simply arguing a lack of motive or intent, but would need to be essential to the defense, as is the case in entrapment defenses. See *United States v. Thomas*, 134 F.3d 975, 979 (9th Cir. 1998). The Ninth Circuit affirmed the exclusion of the good-acts evidence, in cases where the defendant's character was not an essential element of any charge, claim, or defense, *United States v. Weygandt*, 681 F. App'x 630, 635 (9th Cir. 2017); *see also United States v. Barry*, 814 F.2d 1400, 1403 (9th Cir. 1987) (explaining that testimony about a lack of prior bad acts was essentially testimony of prior good acts and barred by Fed. R. Evid. 405); *United States v. Ellisor*, 522 F.3d 1255, 1270 (11th Cir. 2008) (observing that "evidence of good conduct is not admissible to negate criminal intent") (internal quotation marks omitted).

The defendant is charged with conspiracy to commit wire fraud and wire fraud. She has not raised any defense that puts her character or a character trait as issue. Because this is not a case in which the defendant's "character or character trait is an essential element of a

charge, claim, or defense," the only proper method for the defendant to establish her good character is through opinion or reputation testimony of character witnesses. Fed. R. Evid. 405(b). Allowing the defendant to present evidence of other good acts would confuse the jury and waste time, while not offering anything probative of the facts of consequence in the case.

The government respectfully submit that any specific instances of good conduct offered by the defendant to establish her character run afoul of Federal Rule of Evidence 405 and should be barred.

## Motion for Corrected or Supplemented Notice or Expert Discovery

On August 23, 2024, Fiore filed an expert notice, indicating her intention to call Michael J. Aloian, CPA, as an expert witness. ECF No. 28. In the notice, Fiore explained that Aloian is "expected to testify using his knowledge and experience about IRS 501(c) entities" and that his testimony "will help jurors understand the IRS rules governing such entities and how they apply to the case at hand." *Id.* at 1. To date, Fiore has not provided any expert report specifying Aloian's opinions or any discovery relating to how Aloian came to any opinions he may testify to. Fiore did, however, attach Aloian's *curriculum vitae* and a list of prior testimony. *Id.* at 3–5. Aloian's resume includes experience with accounting but does not specify any experience specifically with any Section 501(c)(3) or other nonprofit entities. *Id.* at 4.

Fiore's expert notice is wholly insufficient under Rule 16 of the Federal Rules of Criminal Procedure. Pursuant to Rule 16, the expert notice must contain "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief" and "the bases and reasons for them." Fed. R. Crim. P. 16(b)(1)(C)(iii). However, where a defendant has already provided a report that contained the required information, then

the expert notice can simply refer to the report without repeating the information in the report. Fed. R. Crim. P. 16(b)(1)(C)(iv). Here, Fiore did not produce an expert report, nor did she file an expert notice that included the required information. ECF No. 28. Instead, Fiore filed a notice that only indicates that Aloian would testify "about IRS 501(c) entities" without any further detail. *Id.* at 1. Because the notice does not indicate what any of Aloian's opinions are or how he arrived at those opinions, it is deficient under Rule 16(b)(1)(C)(iii).

Ultimately, the deficiencies in the expert notice leave the government without adequate information about Aloian's opinions or the bases for those opinions. See Advisory Committee Notes to Rule 16 (noting that the 2022 Amendments specifically substituted the phrase "written summary" with a "complete statement" to ensure that the parties received adequate information about the content of the witness's testimony and potential impeachment). The government cannot appropriately move to exclude improper testimony by Aloian, prepare for Aloian's cross-examination, or secure an expert of its own to oppose whatever Aloian's opinions may be without additional information about Aloian's opinions. *See* Advisory Committee Notes to Rule 16 (noting that the 2022 Amendments "intended to facilitate trial preparation, allowing the parties a fair opportunity to prepare to cross-examine expert witnesses and secure opposing expert testimony if needed"). Rule 16(d)(2)(D) allows the Court to enter any order that is just under the circumstances when a party fails to comply with Rule 16. Here, justice and Rule 16 require that the government receive adequate information about Aloian's proposed expert testimony prior to trial. Accordingly, the Court should order Fiore to either correct or supplement her expert notice such that it includes a complete statement of all opinions that Fiore will elicit from Aloian along with the reasons and bases for those opinions, or order Fiore to provide the government

with Aloian's expert report and any and all underlying material related to the report and Aloian's opinions. See *United States v. Weiner*, Case No. 1:22-cr-19-PGG, ECF No. 342 (S.D.N.Y. Jan. 8, 2024) (ordering defense to file a supplemented expert notice outlining the expert's specific opinions and the bases for them); *United States v. Babichenko*, Case No. 1:18-CR-00258-BLW, ECF No. 1419 (D. Idaho May 2, 2022) (ordering defense to file supplemental notices that fully comply with Rule 16(b)(1)(C)). The government asks that Fiore be ordered to comply by September 9 to allow the government suitable time to prepare for trial. However, if Fiore fails to comply sufficiently in advance of trial, justice requires that the Aloian's testimony be excluded. *See United States v. Dzionara-Norsen*, No. 21-454-CR, 2024 WL 191803, at *4 (2d Cir. Jan. 18, 2024) (district court did not err precluding expert testimony because defendant failed to provide a full statement of expert's opinions and reasons for them); *United States v. Biden*, Case No. 2:23-CR-00599-MCS, ECF No. 211 (C.D. Cal. Aug. 27, 2024) (precluding defendant's expert testimony because notice only included topic areas expert would opine on but not expert's opinions and because the deadline to supplement the expert notice had expired).

## Motion for a Pretrial *Daubert* Hearing

The government respectfully requests the court order a Daubert hearing with regards to Mr. Aloian's expert testimony. The district court serves as a gatekeeper to keep out expert testimony that is neither relevant nor reliable and has broad latitude in exercising this function. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993); *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007). The gatekeeping function applies not only to scientific expert testimony but to all expert testimony. *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002) (citing *Kumho Tire*,

526 U.S. at 147). The inquiry into expert testimony's reliability is a "flexible one." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). Although the Supreme Court in *Daubert* discussed several reliability factors, the district court has "broad latitude to determine" what factors in *Daubert*, if any, are relevant to the reliability determination. *Daubert*, 509 U.S. at 592–94; *Estate of Barabin v. Asten Johnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc) (quoting *Kumho Tire*, 526 U.S. at 150, 153). The district court also "also has broad latitude in determining the appropriate form of the inquiry." *Id.* (citing *United States v. Alatorre*, 222 F.3d 1098, 1102 (9th Cir. 2000)). When expert testimony is "experience-based" rather than "science-based," the reliability determination may be more difficult. *United States v. Valencia-Lopez*, 971 F.3d 891, 898 (9th Cir. 2020). Nonetheless, the district court must conduct its own reliability determination. *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1064 (9th Cir. 2002), *overruled on other grounds by Barabin*, 740 F.3d 457.

The Ninth Circuit has been clear that district courts must conduct their own determinations of an expert's reliability rather than relying on an expert witness's general qualifications to determine reliability. *See United States v. Valencia-Lopez*, 971 F.3d 891 (9th Cir. 2020); *United States v. Hermanek*, 289 F.3d 1076 (2002). First, in *Hermanek*, the government offered an FBI agent as an expert to interpret words used in the cocaine trafficking business, including words previously unknown to the agent. *Hermanek*, 289 F.3d at 1083. The government proffered him as an expert based on his experience as an agent, including his experience investigating drug trafficking, his experience transcribing wiretapped conversations, his observation of more than 20 controlled purchases of narcotics, and his discussions with law enforcement agents and informants regarding the meanings of drug terminology. *Id.* at 1091. The Ninth Circuit held that the district court erred in qualifying the

agent because the district court relied solely upon the agent's general qualifications without requiring the government to explain the method the agent used to arrive at his interpretations of words he had never encountered before. *Id.* at 1094. Reliability could not be established because there was no detailed explanation of the knowledge, investigatory facts, and evidence the agent was drawing from in forming his opinions. *Id.*

In *Valencia-Lopez*, a truck driver transporting peppers from Mexico to the United States was stopped at the border and found with marijuana hidden within the pepper packages. *Valencia-Lopez*, 971 F.3d at 894. The defendant claimed that he acted under duress, explaining that gunmen held him captive and forced him to continue driving and pretend nothing happened, or they would kill him and his family. *Id.* at 895. The government offered a Homeland Securities Investigations ("HSI") special agent as an expert at trial. *Id.* at 895–96. Although the agent had experience with working undercover (including when he obtained a commercial trucking license) and with setting up undercover drug trafficking deals across the border, the agent had never operated undercover in Mexico. *Id.* at 896. Regardless, the agent was qualified as an expert at trial and testified that the probability of a drug trafficking organization entrusting large quantities of illegal drugs to the driver of a commercial vehicle who has been coerced to comply was "almost nil, almost none." *Id.* at 897. The Ninth Circuit held that the agent's qualifications alone could not establish the reliability and thus admissibility of his 'almost nil' conclusion, finding that "there is too great an analytical gap between" his experience and his conclusion. *Id.* at 900–01 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Similar to *Hermanek* and *Valencia-Lopez*, Aloian's general experience in public accounting, alone, cannot provide a reliable basis for any opinion regarding Section 501(c)(3)

entities. Neither the expert notice nor Aloian's curriculum vitae explain in the necessary detail Aloian's knowledge of 501(c)(3) entities or how such knowledge would lend to any opinions about 501(c)(3) entities. As in *Valencia-Lopez*, there is "there is too great an analytical gap between" Aloian's general experience with public accounting and any opinions he was to make about 501(c)(3) entities. Accordingly, a *Daubert* hearing in advance of trial is necessary to establish whether Aloian's testimony would be reliable and admissible.

make about 501(c)(3) entities. Accordingly, a *Daubert* hearing in advance of trial is necessary to establish whether Aloian's testimony would be reliable and admissible.

 

 

DATED this 3rd day of September 2024.

                       COREY R. AMUNDSON
                       Chief, Public Integrity Section
                       U.S. Department of Justice

                       /s/ Alexander Gottfried
                       Alexander Gottfried and Dahoud Askar
                       Trial Attorneys